```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

- - - - - - - - - - - - - - - - - - - -X

ARISTA RECORDS, INC., et al.,

                Plaintiffs,    REPORT AND
                                            RECOMMENDATION
      - against -
                                               CV 05-3634 (DLI)(MDG)

DALABA COLOR COPY CENTER, INC.,
et al.,

                Defendants,

- - - - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

    This is a trademark infringement action brought by record companies, including Arista Records, against various corporate and individual defendants, including Magic Sound Media. Konica Minolta Business Solutions ("KMBS") seeks to intervene in this action pursuant to Fed. R. Civ. P. 24(a)(2). By order dated June 19, 2006, the Honorable Dora L. Irizarry referred KMBS's motion to me for report and recommendation.

    For the reasons set forth below, I respectfully recommend that the motion to intervene be granted.

## BACKGROUND

    Plaintiffs are among the oldest and largest manufacturers, advertisers, and marketers of music recordings, including those in the form of compact discs ("CDs"). Order Granting Preliminary Injunction dated February 1, 2006 (ct. doc. 43) at ¶ 1. Plaintiffs have used their federally registered trademarks in connection with their record businesses for many years throughout the United States and the world. Id.

Over the past several years, a sophisticated counterfeiting industry has developed in the United States and abroad in connection with the sale of unauthorized copies of music recordings and related packaging. Declaration of Roy J. Casse dated October 28, 2005 ("Casse Decl.") (ct. doc. 6) at ¶ 5. Plaintiffs, through their membership in the leading trade group, Recording Industry Association of America, Inc. ("RIAA"), have brought or otherwise assisted in numerous successful legal actions against a variety of companies and individuals involved at every level in the chain of manufacture and marketing of these counterfeit products. Id. at ¶ 13. During its ongoing investigations, RIAA became aware of two groups of companies, individuals and fictitious entities in New York City engaged in the widespread counterfeiting of CDs, including the use of photocopy machines to reproduce genuine CD inserts (collectively "defendants"). Id. at ¶ 14.

On August 3, 2005, plaintiffs brought the instant action against defendants to protect their federally registered trademarks from defendants' counterfeiting operations. On November 23, 2005, the Honorable Dora L. Irizarry granted plaintiffs' application for a Temporary Restraining Order against defendants and issued an Amended Order of Seizure of goods from defendant Magic Sound Media's premises. See ct. doc. 17. On November 30, 2005, with the assistance of the U.S. Marshals Service, plaintiffs executed seizures at two locations, including premises at 971B East New York Ave., Brooklyn, NY, occupied by Magic Sound Media. Declaration of Thomas A. Canova dated February 28, 2006 ("2/28/06 Canova Decl.") (ct. doc. 47) at ¶ 4.

KMBS is a dealer of office imaging equipment, imaging toner and related supplies necessary for imaging production. Affidavit of Mark Bradford dated January 5, 2006 ("Bradford Aff.") at ¶ 2 (attached as Exh. A to the Affidavit of H. John Schank, II dated January 6, 2006 ("1/6/06 Schank Aff.") (ct. doc. 19)). In its business operations, KMBS enters into contracts whereby it provides toner and other imaging supplies to its customers and charges the customers only for the actual paper copies made on the KMBS brand equipment. Id. at ¶¶ 2-5. Until a copy is made, the copying supplies, toner and related materials are the property of KMBS. Id. at ¶ 5.

During the years 2003 and 2004, KMBS entered into several agreements with "The DeLuca Organization" to provide copying supplies and services on a per copy basis. 1/6/06 Schank Aff., Exh. B. KMBS seeks to intervene to assert its alleged ownership interest in the imaging toner and supplies seized from the premises of defendant Magic Sound Media, which it alleges is the same entity as The DeLuca Organization. KMBS's Memorandum of Law in Support of KMBS's Reply to Opposition to Motion to Intervene ("KMBS Reply") (ct. doc. 53) at 4-5.

## DISCUSSION

A proposed intervener seeking intervention as of right must satisfy all of the following requirements in Rule 24(a) of the Federal Rules of Civil Procedure:

> (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action.

D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001) (citations omitted). Intervention may be denied if any of these requirements is not met. Id.

In considering a motion to intervene, the court "must accept as true the non-conclusory allegations of the motion." UPS of Am. v. NET, Inc., 225 F.R.D. 416, 421 (E.D.N.Y. 2005); Willis v. Firestone Building Prod. Co., 231 F.R.D. 447, 449 (D. Conn. 2005); Bay Casino, LLC v. M/V Royal Empress, 199 F.R.D. 464, 466 (E.D.N.Y. 1999). While the court need not consider allegations that are frivolous on their face, a motion to intervene as a matter of right "should not be dismissed unless it appears to a certainty that the intervener is not entitled to relief under any set of facts which could be proved under the complaint." Bay Casino, 199 F.R.D. at 466; see Willis, 231 F.R.D. at 449. Moreover, "each intervention case is highly fact specific and tends to resist comparison to prior cases." Willis, 231 F.R.D. at 449; Bay Casino, 199 F.R.D. at 466.

### 1. Timeliness of the application

Although both plaintiffs and defendant Magic Sound Media oppose KMBS's intervention, neither questions the timeliness of KMBS's motion. In any case, KMBS's motion to intervene is timely, as it was filed just five months after the complaint was filed, and before the commencement of discovery. See Mortgage Lenders Network, Inc. v. Rosenblum, 218 F.R.D. 381, 384 (E.D.N.Y. 2003) (intervention was timely despite 6 month delay and exchange of some discovery).

### 2. KMBS's interest in the action

Second, a proposed intervener must have an interest in the

proceeding that is "direct, substantial, and legally protectable." Washington Elec. v. Mass. Mun. Wholesale Elec., 922 F.2d 92, 97 (2d Cir. 1990); American Lung Ass'n v. Reilly, 141 F.R.D. 19, 21 (E.D.N.Y.), aff'd, 962 F.2d 258 (2d Cir. 1992). An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule. Washington Elec. 922 F.2d at 97; H.L. Hayden Co. v. Siemens Medical Sys., Inc., 797 F.2d 85, 88 (2d Cir. 1986); Restor-A-Dent Dental Labs., Inc. v. Certified Aloe Prods., Inc., 725 F.2d 871, 874 (2d Cir. 1984). However, "[n]o specific legal or equitable interest need be established." Willis, 231 F.R.D. at 449.

KMBS argues that The DeLuca Organization is, in fact, the same entity as defendant Magic Sound Media. As support, KMBS provides evidence that The DeLuca Organization and defendant Magic Sound Media have the same business address, including its contract documents with The DeLuca Organization, which state it is located at 971B East New York Avenue, Brooklyn, New York, as well as invoices sent to that address. See 1/6/06 Schank Aff., Exhs. B and C. This is the same address reflected in the business certificate of defendant Magic Sound Media.[1] See

---

[1] The Court can take judicial notice of public filings. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of contents of corporate filings with SEC); Banks v. Consumer Home Mortgage, No. 01-CV-8058, 2003 WL 21251584, at *6 n.7 (E.D.N.Y. Mar. 28, 2003) (taking judicial notice of public record on file with Secretary of State for Georgia); McMichael v. U.S. Filter Corp., No. 99-182, 2001 WL 418981, at *8 (E.D. Ca. Feb. 23, 2001) (taking judicial notice of certificate of incorporation in Delaware).

Declaration of Gale Barry dated January 11, 2006 ("Barry Decl.") (ct. doc. 29-2) at ¶ 2.

Additionally, KMBS has provided copies of business checks of defendant Magic Sound Media, which are signed by Barry Thierno and are payments made for "DeLuca NY," Account No. "299147" - the same account number listed on the agreements between KMBS and The DeLuca Organization.  See Declaration of H. John Schank dated March 10, 2006 ("3/10/06 Schank Aff.") (ct. doc. 54), Exh. A. According to Gale Barry, the owner of defendant Magic Sound Media, her husband, Thierno Barry, was a paid employee for the year 2004.  Barry Decl. at ¶ 6.  Whether or not The DeLuca Organization is the same entity as defendant Magic Sound Media, KMBS has sufficiently demonstrated that the two entities, at the very least, are closely aligned in interest and conduct operations at the same location.

Furthermore, according to Investigator Roy Casse, when RIAA first investigated 971B East New York Avenue in April and July of 2004, there was a business called B & B Media Supply operating there.  Declaration of Roy Casse dated June 24, 2005 (ct. doc. 16) at ¶¶ 15, 38-43, 70.  On September 8, 2004, the name on the sign over the front of the location was "Magic Sound Media."  Id. at ¶ 44.  Additionally, the investigator obtained information from Xerox Corp., a company which also leased photocopy equipment to defendants, that different accounts were opened with companies having different names with operations at 971B East New York Avenue between September 2000 and May 2003, including African Color Copy Center, Inc., AWA Color Copy Center and Boby Express of New York, Inc.  Id. at ¶ 70.  Such evidence of the use of

numerous business names at the same location and the close relationship between defendant Magic Sound Media and The DeLuca Organization suggest that there may be one ongoing concern operating under different names at the East New York Avenue location.

More importantly, KMBS has presented contract documents with The DeLuca Organization to support its claim of ownership of the imaging toner and supplies seized from 971B East New York Avenue. As explained by KMBS's Regional Vice President Mark Bradford, KMBS regularly enters into contracts with its customers for the sale and supply of raw materials necessary for imaging production. Bradford Aff. at ¶ 2. Although KMBS delivers toner and related copying supplies to the customer's location to allow the customer to be fully prepared to make copies, the form contracts provide that those materials are the property of KMBS until a copy is made on the KMBS brand equipment. Id. at ¶ 5.

The contracts between KMBS and The DeLuca Organization submitted by KMBS support this contention. The Minolta Business Solutions Black and White Replacement Service Agreement ("Service Agreement") states:

> Under the terms and conditions of this program, customer purchasing this agreement will be entitled to all onsite service calls, all labor, all replacement parts, preventative maintenance kits, imaging units, fusing units and supplies, toner as needed. (No paper or staples).

Service Agreement (attached as Exh. B to 1/6/06 Schank Aff.). Additionally, KMBS's "'Cost Per Copy' Color Service & Supply Contract" ("Cost Per Copy Contract") states with respect to its pricing chart:

> Covers engine, accessories and supplies (toner) -*Excludes*

> *Paper, Staples and Taxes*. All copies/prints (color and black/white) will be billed in arrears at actual usage (the customer pays for what they use).

Cost Per Copy Contract (attached as Exh. B to 1/6/06 Schank Aff.). While these provisions do not explicitly state that KMBS retains title to such imaging supplies, they do indicate that the customer pays only for the actual copies made, with the cost of toner and supplies reflected in the price paid by the customer. Because the toner and supplies, unlike paper and staples, are included in the per copy price, the customer does not purchase them separately.[2] As reflected in an invoice KMBS sent to The DeLuca Organization dated November 30, 2005, KMBS did not charge for 60 units of toner delivered to the defendant's address. See Invoice Number 204483623[3] (attached as Exh. C to 1/6/06 Schank Aff.). Together, these documents evince that neither defendant Magic Sound Media nor The DeLuca Organization purchased the seized toner and supplies from KMBS.

By retaining title to the seized toner and supplies, KMBS has sufficiently shown a property interest in property seized in the present case. "Interests in property are the most elementary type of right that Rule 24(a) is designed to protect." 7C Charles Alan Wright, et al., Federal Practice & Procedure § 1908 (2d ed. 1986); Mountaintop Condo. Ass'n. v. Dave Stabbert Master Builder, 72 F.3d 361, 367 (3d Cir. 1995); Mothersill D.I.S.C.

---

[2] KMBS does not specifically claim an interest in the seized boxes of photocopy paper or otherwise dispute plaintiffs' claim that none of the seized paper came from KMBS.

[3] There are handwritten dollar amounts totaling $6,480.00 next to printed amounts of $0.00. These handwritten numbers are not explained by KMBS. It is clear, however, that there was no charge for the 60 units of toner.

Corp. v. Petroleos Mexicanos S.A., 831 F.2d 59, 62 (5th Cir. 1987); Liberty Res., Inc. v. Phila. Hous. Auth., 395 F. Supp. 2d 206, 208 (E.D. Pa. 2005); see also Fed. R. Civ. P. 24(a)(2) ("an interest relating to the property or transaction which is the subject of the action"). Because KMBS has shown a legally protectable property interest, it has satisfied the second requirement of the test.[4]

Plaintiffs also contend that KMBS's interest is tangential to the subject matter of the present litigation and that "an entire new lawsuit focusing on breach of contract will spring up in the middle of the present infringement case, with issues having nothing to do with plaintiffs' counterfeiting claims against Defendants." Plaintiffs' Opposition to KMBS's Motion to Intervene ("Pls'. Opp.") (ct. doc. 48) at 7. However, KMBS's intervention will not radically change the nature of the case. As KMBS points out, it "does not seek joinder in this matter, or to somehow interject new or collateral issues which would in any way alter the landscape of this case - only to intervene for the specifically stated and limited purpose of reclaiming its items

---

[4]/ Plaintiffs argue that KMBS seeks to assert a "mere economic interest." However, KMBS clearly states that it does not seek to intervene to collect defendant's debt for past services, but simply to prevent further loss of its current property interest in the toner and supplies. KMBS Reply at 10-11. In any case, the Second Circuit has held that "Rule 24(a)(2) does not require that the intervener prove a property right, whether in the constitutional or any other sense." Brennan v. N.Y. City Bd. of Educ., 260 F.3d 123, 130 (2d Cir. 2001). Indeed, an economic interest is sufficient for a party to intervene in an action. See id.; New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York, 516 F.2d 350, 351-52 (2d Cir. 1975) (per curiam) (granting intervention where interest asserted was economic interest not property right).

seized by plaintiffs."  KMBS Reply at 8.

Contending that "the retail value of the 35 boxes of toner and a few boxes of supplies . . . are, at best, worth only about $20,000," plaintiffs further argue that KMBS's interest is too insubstantial to warrant intervention.  Plaintiffs' Opposition at 7.  However, plaintiffs neither explain how they arrive at this figure, nor do they provide any authority for the proposition that proof of a threshold dollar amount or <u>substantial</u> interest is required.  Rather, "[w]here an interest is claimed in a particular property or fund as to which ownership or other rights are disputed in the litigation, the existence of the required interest, and thus the right to intervene is usually apparent." <u>Brooks v. Sussex County State Bank</u>, 167 F.R.D. 347, 351 (N.D.N.Y. 1996) (permitting intervention in dispute over $45,000 treasurer's check).  Accordingly, KMBS's property interest in the seized materials is sufficient to satisfy the third requirement for intervention.  <u>See</u> <u>In re Oceana Int'l, Inc.</u>, 49 F.R.D. 329, 332 (S.D.N.Y. 1969) ("[W]hen a party seeks to intervene in a proceeding which could ultimately vitiate its title and right to possess property which is the subject of that action, sufficient interest exists to intervene therein as of right").

<u>3. Interest may be impaired by disposition of action</u>

KMBS argues that in the absence of intervention, its ability to protect its interest may be impaired.  KMBS's Memorandum of Law in Support of KMBS's Motion to Intervene ("KMBS Mem.") (ct. doc. 21) at 13.  As it correctly notes, so long as plaintiffs retain the seized items, KMBS cannot market, sell, or distribute them to KMBS's customers.  <u>Id.</u>  In fact, because plaintiffs

contend that the seized toner and supplies are "means" of manufacturing counterfeit CDs and inserts, they seek the right to destroy or "sell[] such items to redress Plaintiffs' substantial damages and legal expenses." Pls'. Opp. at 11-12. In light of the possibility that plaintiffs may liquidate the seized materials, disposition of the case without KMBS's intervention "might as a practical matter impair its interest." Fed. R. Civ. P. 24(a)(2).

### 4. KMBS's interest is not adequately protected by the parties to the action

Finally, KMBS has shown that there will be inadequate protection of its interest unless it is allowed to intervene. The burden of showing such inadequacy is minimal. <u>Washington Electric</u>, 922 F.2d at 98. The test is "whether the [parties'] interests [are] so similar to those of [the putative intervener] that adequacy of representation [is] assured." <u>Brennan</u>, 260 F.3d at 133. Because plaintiffs and defendant Magic Sound Media/The DeLuca Organization have no interest in preserving the imaging toner and supplies for KMBS's benefit, KMBS's interest is not adequately protected without its intervention.

## CONCLUSION

Since, as discussed above, KMBS has satisfied the requirements of Rule 24(a), I recommend that the Court grant KMBS's motion to intervene. Copies of this report and recommendation will be sent electronically to the parties on this date. Any objections must be filed with the Clerk of Court, with a copy to Judge Irizarry and the undersigned, by September 7, 2006. Failure to file objections within the specified time

waives the right to appeal.  See 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b).

**SO ORDERED.**


Dated:     Brooklyn, New York
           August 18, 2006
                                          /s/
                                   MARILYN D. GO
                                   UNITED STATES MAGISTRATE JUDGE